UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Marlene Fearing, M.A. Fearing
Companies, Inc., M.A. Fearing, Inc.,
and Progressive Real Estate, Inc.,

      Plaintiffs,

v.                                                                                                  Civ. No. 04-5127 (JNE/SRN)
                                                                     ORDER

City of Lake St. Croix Beach, and Mary
Parr, Robert ("Bob") Swenson, and
Linda O'Donnell personally and as
employees/agents of City of Lake St.
Croix,

      Defendants.

---

Jesse Gant, III, Esq., appeared for Plaintiffs Marlene Fearing, M.A. Fearing Companies, Inc., M.A. Fearing, Inc., and Progressive Real Estate, Inc.

Susan M. Tindal, Esq., Iverson Reuvers, appeared for Defendant City of Lake St. Croix Beach and Defendants Mary Parr, Robert Swenson, and Linda O'Donnell in their official capacities.

Jon Erik Kingstad, Esq., Kingstad Law Office, appeared for Defendants Robert Swenson and Mary Parr in their individual capacities.

---

This is an action by Marlene Fearing (Ms. Fearing), M.A. Fearing Companies, Inc., M.A. Fearing, Inc., and Progressive Real Estate, Inc. (collectively, Plaintiffs), against the City of Lake St. Croix Beach (City), Mary Parr, Robert Swenson, and Linda O'Donnell (collectively, Defendants).[1]  Plaintiffs assert claims under 42 U.S.C. § 1983 (2000), for alleged violations of their constitutional rights.  Plaintiffs also allege claims for violations of the Minnesota Human Rights Act (MHRA), Minn. Stat. § 363A.15 (2004), and assault.  The case is before the Court on

---

[1] The Amended Complaint incorrectly names Parr, Swenson, and O'Donnell as defendants in their capacities as employees or agents of the "City of Lake St. Croix."  The suit against them in their official capacities is a suit against the City.  *See Kentucky v. Graham*, 473 U.S. 159, 165 (1985); *Johnson v. Outboard Marine Corp.*, 172 F.3d 531, 535 (8th Cir. 1999).

Plaintiffs' motion for partial summary judgment; a motion for summary judgment by Parr and Swenson in their individual capacities; and the City's motion for summary judgment. For the reasons set forth below, the Court dismisses with prejudice Plaintiffs' claims under section 1983, and dismisses without prejudice Plaintiffs' state-law claims.

## I. BACKGROUND

Ms. Fearing is the sole shareholder of M.A. Fearing Companies, M.A. Fearing, and Progressive Real Estate, which develop and sell real estate. Defendants include the City; O'Donnell, the City Clerk since 1986; Parr, a member or alternate member of the City's Planning Commission since 1999; and Swenson, a member of the City's Planning Commission since 1998.

In 1992, M.A. Fearing Companies purchased land in the City. In 1993, M.A. Fearing Companies applied for and obtained the City's preliminary approval of a plat and Planned Unit Development. On June 3, 1994, the City and M.A. Fearing Companies executed a Developer's Agreement, which anticipated the development of nineteen lots. Under the Developer's Agreement, M.A. Fearing Companies agreed to build at its expense "Plan A Improvements," including storm water storage ponds, and to "dedicate and survey all storm water holding ponds as required by the City." M.A. Fearing Companies also agreed to substantially complete "[a]ll storm water, drainage, and ponding improvements" before the issuance of any building permits. The Developer's Agreement further required M.A. Fearing Companies to "dedicate to the City, prior to the approval of the final plat, at no cost to the City, all permanent or temporary easements necessary for the construction and installation of the Plan A Improvements."

In October 1995, the City brought suit against M.A. Fearing Companies to declare default under the terms of the Development Agreement and to secure the completion of improvements

for the development. M.A. Fearing Companies asserted a counterclaim, alleging that the City had made unreasonable demands. In April 1996, the parties reached a settlement agreement through mediation. In August 1996, the Minnesota District Court for the Tenth Judicial District determined that the agreement was "a valid and enforceable settlement agreement binding upon all parties to [the] action."

In 1996, Parr purchased a house in the development, known as St. Croix Villas. In 1997, after M.A. Fearing Companies declared bankruptcy, Progressive Real Estate acquired most of the lots. Swenson purchased a house in St. Croix Villas from Progressive Real Estate in 1998.

In 2001, Transaction Real Estate purchased several lots in St. Croix Villas from Progressive Real Estate on a contract for deed. After Transaction Real Estate failed to make payments due, Progressive Real Estate obtained a judgment in 2003 for the unpaid balance. The contract for deed has not been cancelled.

In 2003, Swenson complained to the City about "noxious weeds" growing on three vacant lots in the development. Ms. Fearing characterizes the plants about which Swenson complained as "wildflowers." After notifying Transaction Real Estate of the complaint, the City mowed the lots.

In July 2003, Ms. Fearing, in her capacity as president of Progressive Real Estate and M.A. Fearing Companies, asserts that she applied for building permits for the vacant lots in St. Croix Villas. According to Ms. Fearing, O'Donnell denied the applications.

In November 2003, Parr cut down two signs that advertised St. Croix Villas. According to Parr, she thought the signs belonged to Transaction Real Estate or its owner. Progressive Real Estate and M.A. Fearing Companies assert that they owned the signs.

3

In 2004, Plaintiffs brought this action. Plaintiffs now move for partial summary judgment. Defendants move for summary judgment.

## II. DISCUSSION

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party "bears the initial responsibility of informing the district court of the basis for its motion," and must identify "those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party satisfies its burden, Rule 56(e) requires the party opposing the motion to respond by submitting evidentiary materials that designate "specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). In determining whether summary judgment is appropriate, a court must look at the record and any inferences to be drawn from it in the light most favorable to the party opposing the motion. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

### A. Section 1983 claims

Section 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured . . . .

42 U.S.C. § 1983. To prevail on a claim under section 1983, a plaintiff must show the defendant caused the deprivation of a federal right while operating under color of state law. *Scheeler v. City of St. Cloud*, 402 F.3d 826, 830 (8th Cir. 2005), *cert. denied*, 126 S. Ct. 1026 (2006). In their Amended Complaint, Plaintiffs allege Defendants violated Plaintiffs' rights under the First,

Fifth, and Fourteenth Amendments to the U.S. Constitution. At the motion hearing, the Court directed Plaintiffs to clarify their claims. Plaintiffs complied by submitting a Memorandum of Specificity of Claims. The Court analyzes below Plaintiffs' section 1983 claims as clarified by Plaintiffs.[2]

   *1.   Land for storm water storage pond*

M.A. Fearing Companies alleges that the City violated the Fifth Amendment by taking the company's land without just compensation. Specifically, M.A. Fearing Companies maintains it should have received compensation for the land dedicated to the City in the Developer's Agreement for use as a storm water storage pond. This claim is the basis of Plaintiffs' motion for partial summary judgment.

Relying on the *Rooker-Feldman* doctrine, the City first argues the Court lacks subject-matter jurisdiction over this claim.[3] The Supreme Court recently noted that lower courts had extended *Rooker-Feldman* "far beyond the contours of the *Rooker* and *Feldman* cases, overriding Congress' conferral of federal-court jurisdiction concurrent with jurisdiction exercised by state courts, and superseding the ordinary application of preclusion law pursuant to 28 U.S.C. § 1738." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 125 S. Ct. 1517, 1521 (2005); *see Lance v. Dennis*, 126 S. Ct. 1198, 1201 (2006) (per curiam) (emphasizing

---

[2]   After reviewing the Complaint, the Amended Complaint, and the motion papers, the Court found Plaintiffs' claims unclear. Specifically, the Court could not ascertain which plaintiffs asserted which claims against which defendants. At the motion hearing, the Court called *Potthoff v. Morin*, 245 F.3d 710 (8th Cir. 2001) (applying shareholder-standing rule to section 1983 claims), to Plaintiffs' attention and directed Plaintiffs to clarify their claims. The Memorandum of Specificity sufficiently identifies Plaintiffs' claims.

[3]   The *Rooker-Feldman* doctrine takes its name from *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923), and *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983).

5

narrowness of *Rooker-Feldman* doctrine).[4] "The basis for the *Rooker/Feldman* doctrine is that, other than in the context of habeas claims, federal district courts are courts of original jurisdiction, and by statute they are precluded from serving as appellate courts to review state court judgments, as that appellate function is reserved to the Supreme Court under 28 U.S.C. § 1257." *Dornheim v. Sholes*, 430 F.3d 919, 923 (8th Cir. 2005), *petition for cert. filed*, (U.S. Mar. 7, 2006) (No. 05-9659). The doctrine "is confined to cases of the kind from which the doctrine acquired its name: cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil*, 125 S. Ct. at 1521-22.

In this case, the City contends the *Rooker-Feldman* doctrine bars M.A. Fearing Companies' claim because the claim is inextricably intertwined with an action previously resolved in state court. As detailed above, the City and M.A. Fearing Companies entered into the Developer's Agreement in June 1994. In October 1995, the City brought suit against M.A. Fearing Companies to declare default under the terms of the agreement and to secure the completion of improvements. M.A. Fearing Companies filed a counterclaim against the City alleging that the City had made unreasonable demands. At a mediation in April 1996, the parties reached a settlement agreement. In August 1996, the Minnesota District Court for the Tenth Judicial District determined that the agreement reached at the mediation was "a valid and enforceable settlement agreement binding upon all parties to [the] action." In an accompanying Memorandum, the Minnesota District Court recognized the scope of releases contained in the settlement agreement:

> [Ms. Fearing] claims that she thought that the cost of maintaining the pond and certain other costs could be arbitrated even after the settlement agreement was

---

[4] The City supports its argument with cases issued before *Exxon Mobil*.

> reached. The settlement agreement clearly states, however, that all past and present claims which could have been brought or which had been brought under these proceedings were released and discharged.

The Minnesota District Court also acknowledged that M.A. Fearing Companies had dedicated land to the City pursuant to the Developer's Agreement:

> [M.A. Fearing Companies'] next argument is that the settlement agreement cannot be upheld since it violates the Statute of Frauds, Minn. Stat. §513.04, by transferring real estate to the City without a written and signed agreement. The land to which [M.A. Fearing Companies] refers was dedicated to the City under the development agreement. The settlement agreement merely advances the time in which the maintenance shifts to the City. This is not a transfer of real estate which requires a written agreement under the statute of frauds.

Because the state court recognized that the land for the storm water storage ponds was dedicated to the City, the City contends that the *Rooker-Feldman* doctrine bars M.A. Fearing Companies' claim.

> Before *Exxon Mobil*, the City's argument may have prevailed. *See Gisslen v. City of Crystal*, 345 F.3d 624, 627-28 (8th Cir. 2003). *Exxon Mobil*, however, requires a different result:

> [The *Rooker-Feldman* doctrine does not] stop a district court from exercising subject-matter jurisdiction simply because a party attempts to litigate in federal court a matter previously litigated in state court. If a federal plaintiff "present[s] some independent claim, albeit one that denies a legal conclusion that a state court has reached in a case to which he was a party …, then there is jurisdiction and state law determines whether the defendant prevails under principles of preclusion."

*Exxon Mobil*, 125 S. Ct. at 1527; *see Lance*, 126 S. Ct. at 1202 ("The District Court erroneously conflated preclusion law with *Rooker-Feldman*."); *Davani v. Va. Dep't of Transp.*, 434 F.3d 712, 718-19 (4th Cir. 2006); *Hoblock v. Albany County Bd. of Elections*, 422 F.3d 77, 86-88 (2d Cir. 2005). In *Davani*, the Fourth Circuit elaborated on the contours of the *Rooker-Feldman* doctrine in the wake of *Exxon Mobil*:

> This language [from *Exxon Mobil*] undercuts the broad interpretation of the *Rooker-Feldman* doctrine we applied in cases like *Barefoot*. Whereas in

7

>*Barefoot* we examined whether the state-court loser who files in federal court is attempting to litigate claims he either litigated or could have litigated before the state court, *Exxon* requires us to examine whether the state-court loser who files suit in federal district court seeks redress for an injury caused by the state-court decision itself. If he is not challenging the state-court decision, the *Rooker-Feldman* doctrine does not apply. If, on the other hand, he is challenging the state-court decision, the *Rooker-Feldman* doctrine applies. It is important to note that the *Rooker-Feldman* doctrine applies in this second situation even if the state-court loser did not argue to the state court the basis of recovery that he asserts in the federal district court. A claim seeking redress for an injury caused by the state-court decision itself—even if the basis of the claim was not asserted to the state court—asks the federal district court to conduct an appellate review of the state-court decision. *Exxon* clarifies, however, that § 1257(a) provides that only the Supreme Court may review state-court decisions. Under *Exxon*, then, *Feldman's* "inextricably intertwined" language does not create an additional legal test for determining when claims challenging a state-court decision are barred, but merely states a conclusion: if the state-court loser seeks redress in the federal district court for the injury caused by the state-court decision, his federal claim is, by definition, "inextricably intertwined" with the state-court decision, and is therefore outside of the jurisdiction of the federal district court.

*Davani*, 434 F.3d at 718-19 (citations and footnote omitted). The Second Circuit, in *Hoblock*, offered the following example and formula to determine when a federal plaintiff complains of injuries caused by a state-court judgment:

> Suppose a plaintiff sues his employer in state court for violating both state anti-discrimination law and Title VII and loses. If the plaintiff then brings the same suit in federal court, he will be seeking a decision from the federal court that denies the state court's conclusions that the employer is not liable, but he will not be alleging injury from the state court judgment. Instead he will be alleging injury based on the employer's discrimination. The fact that the state court chose not to remedy the injury does not transform the subsequent federal suit on the same matter into an appeal, forbidden by *Rooker-Feldman*, of the state-court judgment.
>
> . . . .
>
> The following formula guides our inquiry: a federal suit complains of injury from a state-court judgment, even if it appears to complain only of a third party's actions, when the third party's actions are produced by a state-court judgment and not simply ratified, acquiesced in, or left unpunished by it. Where a state-court judgment causes the challenged third-party action, any challenge to that third-party action is necessarily the kind of challenge to the state judgment that only the Supreme Court can hear.

8

*Hoblock*, 422 F.3d at 87-88 (footnote omitted).

In light of *Exxon Mobil* and its elaboration in *Davani* and *Hoblock*, the *Rooker-Feldman* doctrine does not bar M.A. Fearing Companies' claim from proceeding in federal court. The injury allegedly experienced by M.A. Fearing Companies comes not from a state-court judgment, but rather from the dedication of land to the City pursuant to the Developer's Agreement. The Court therefore rejects the City's assertion that the *Rooker-Feldman* doctrine deprives the Court of subject-matter jurisdiction over M.A. Fearing Companies' claim.

The City next argues that the doctrine of res judicata—or claim preclusion—bars M.A. Fearing Companies' claim. Federal courts must accord the same preclusive effect to a state-court judgment that it would receive in the courts of the state from which the judgment emerged. 28 U.S.C. § 1738 (2000); *Lance*, 126 S. Ct. at 1202; *Exxon Mobil*, 125 S. Ct. at 1527. Under Minnesota law, "[t]he doctrine of res judicata (claim preclusion) bars a claim when litigation on a prior claim involved the same cause of action, there was a judgment on the merits, and the claim involved the same parties or their privies." *Nelson v. Am. Family Ins. Group*, 651 N.W.2d 499, 511 (Minn. 2002). The doctrine applies only if the party against whom it is asserted had a full and fair opportunity to litigate the matter in the prior proceeding. *Id.* "If those requirements are met, res judicata bars not only claims as to matters actually litigated, but also as to every matter that might have been litigated in the prior proceeding." *Id.*

In this case, the requirements of res judicata are satisfied. "The cause of action is the same when it involves the same set of factual circumstances or when the same evidence will sustain both actions." *Beutz v. A.O. Smith Harvestore Prods., Inc.*, 431 N.W.2d 528, 533 (Minn. 1988) (citation omitted); *see Hauschildt v. Beckingham*, 686 N.W.2d 829, 840 (Minn. 2004); *Hauser v. Mealey*, 263 N.W.2d 803, 807 (Minn. 1978) ("[A] plaintiff may not split his cause of

action and bring successive suits involving the same set of factual circumstances."); *Myers ex rel. Myers v. Price*, 463 N.W.2d 773, 777 (Minn. Ct. App. 1990). As summarized above, the earlier litigation addressed costs associated with maintaining the storm water storage pond and the dedication to the City of land for the pond. Thus, M.A. Fearing Companies' present claim is the same cause of action at issue in the earlier litigation. Next, the City and M.A. Fearing Companies settled the earlier litigation in April 1996. Approximately four months later, the Minnesota District Court enforced the settlement agreement. The enforcement of the settlement agreement yielded a final judgment. *Goldberger v. Kaplan, Strangis & Kaplan, P.A.*, 534 N.W.2d 734, 736 n.1 (Minn. Ct. App. 1995). Finally, M.A. Fearing Companies had a full and fair opportunity to litigate its earlier claim. It asserted a counterclaim, entered into a settlement agreement, and contested the settlement's validity. The Court discerns no significant procedural limitations placed on M.A. Fearing Companies. M.A. Fearing Companies had every incentive to fully litigate the matter, and effective litigation was not limited by the nature of the relationship of the parties.[5]

Notwithstanding the satisfaction of the requirements to apply res judicata, M.A. Fearing Companies asserts that the Court should not bar its claim because the doctrine is not rigidly applied. *See Johnson v. Consol. Freightways, Inc.*, 420 N.W.2d 608, 613 (Minn. 1988). Even if the Court has the discretion to refuse to apply the doctrine, *see Sondel v. Northwest Airlines, Inc.*, 56 F.3d 934, 941 (8th Cir. 1995), the Court perceives no injustice from its application in this case. *See Johnson*, 420 N.W.2d at 613-14. In settling the earlier litigation, M.A. Fearing

---

[5] In their reply memorandum, Plaintiffs discuss an action brought in 2003 to support their assertion that res judicata does not apply. The action settled in 1996 is, however, the basis of the City's argument for the application of res judicata.

Companies agreed to release and discharge all past and present claims that could have been asserted or that had been asserted.

In short, the *Rooker-Feldman* doctrine does not preclude the Court from exercising jurisdiction over M.A. Fearing Companies' claim. The claim is, however, barred by the doctrine of res judicata. The Court therefore denies Plaintiffs' motion for partial summary judgment. The Court grants the City's motion for summary judgment as it relates to M.A. Fearing Companies' claim under section 1983 for the allegedly unconstitutional taking of the company's land.

   *2.    Denial of building permits*

M.A. Fearing Companies and Progressive Real Estate allege that O'Donnell, in her capacity as the City's clerk, violated their rights to due process by refusing in July 2003 to grant them building permits for three lots in the St. Croix Villas development. In analyzing this claim, the Court must first consider whether M.A. Fearing Companies or Progressive Real Estate has a protected property interest:

> In analyzing a claim that the deprivation of property violates either procedural or substantive due process rights, a court must first consider whether the claimant has a protected property interest to which the Fourteenth Amendment's due process protection applies. Protected property interests are created by state law, but federal law determines whether the interest rises to the level of a constitutionally-protected property interest. A state law creates a property interest in a building permit only when, among other things, the proper applicant has complied with all the applicable laws and codes required for permit issuance.

*Ellis v. City of Yankton*, 69 F.3d 915, 917 (8th Cir. 1995) (citations omitted).

In this case, the record reveals that, in November 1992, M.A. Fearing Companies obtained the property that ultimately became St. Croix Villas. M.A. Fearing Companies recorded its warranty deed in March 1993. Later, Progressive Real Estate acquired the lots owned by M.A. Fearing Companies. In 2001, Transaction Real Estate purchased several lots,

including those for which M.A. Fearing Companies and Progressive Real Estate sought building permits in 2003, on a contract for deed. According to Ms. Fearing's affidavit, Transaction Real Estate failed to make payments due under the contract for deed. The contract for deed was not, however, cancelled. Instead, in a state-court judgment dated March 7, 2003, Progressive Real Estate obtained a judgment against Transaction Real Estate for the unpaid balance of the contract for deed.[6] Having detailed the relevant sales history of the lots, the Court turns to what interest M.A. Fearing Companies or Progressive Real Estate had in the lots when they applied for building permits in July 2003.

Under Minnesota law, a contract for deed equitably conveys the property from the vendor to the vendee:

> It is well-settled real estate law that a contract for deed works an equitable conversion of the real property conveyed. The vendor retains "fee title" and the vendee acquires a "vendee's interest." . . . .
>
> As the equitable fee owner of the premises, the vendee is entitled to full possession and enjoyment of the property, subject, of course, to cancellation of that ownership interest if the vendee does not comply with the contract terms.

*Stiernagle v. County of Waseca*, 511 N.W.2d 4, 5 (Minn. 1994); *see Petition of S.R.A., Inc.*, 18 N.W.2d 442, 449-50 (Minn. 1945) ("The vendee's equitable title may be divested for failure of the vendee to perform the conditions of the contract; but, until divested, such equitable title is wholly in the vendee."), *aff'd sub nom. S.R.A., Inc. v. Minnesota*, 327 U.S. 558 (1946). If the vendee defaults, the vendor has a choice of remedies: "The vendor may sue on the contract for the balance of the purchase price or cancel the contract, recover the land and forego recovery of the balance." *Neuman v. Demmer*, 414 N.W.2d 240, 243 (Minn. Ct. App. 1987); *see Cmty. Ins. Agency, Inc. v. Kemper*, 426 N.W.2d 471, 474 (Minn. Ct. App. 1988). In this case, Progressive Real Estate obtained a judgment for the unpaid balance instead of canceling the contract for

---

[6] Plaintiffs included the state-court judgment with their Memorandum of Specificity.

deed. Having surrendered "full possession and enjoyment of the property" subject to a right to cancel which it did not exercise, Progressive Real Estate had no interest in the property when it and M.A. Fearing Companies sought building permits in July 2003, other than to enforce its judgment for the unpaid balance on the contract for deed. Accordingly, neither Progressive Real Estate nor M.A. Fearing Companies was a proper applicant for the building permits. *See Ellis*, 69 F.3d at 917-18. O'Donnell's alleged refusal to grant building permits to Progressive Real Estate and M.A. Fearing Companies did not deprive them of any rights protected by federal law. *See id.* The Court therefore grants the City's motion for summary judgment as it relates to the claim under section 1983 for the denial of building permits.

   *3.   Destruction of wildflowers*

Progressive Real Estate and M.A. Fearing Companies allege that Swenson, in his capacity as a planner for the City, destroyed their property in 2003 when he allegedly had the City mow wildflowers on the three lots in the St. Croix Villas development. For the reasons set forth in the discussion of the claim for denial of building permits, neither Progressive Real Estate nor M.A. Fearing Companies had a constitutionally-protected property interest in the lots. *See id.* Accordingly, the alleged destruction of the wildflowers that grew on the lots did not deprive Progressive Real Estate or M.A. Fearing Companies of rights protected by federal law. *See id.* The Court therefore grants the City's and Swenson's motions as they relate to the claim under section 1983 for the destruction of wildflowers.

   *4.   Destruction of signs*

Progressive Real Estate and M.A. Fearing Companies allege that Parr, in her capacity as a planner for the City, violated their rights under the First, Fifth, and Fourteenth Amendments by destroying their advertising signs in the summer and fall of 2003. Parr asserts she is entitled to

13

summary judgment because she did not act under color of state law when she allegedly destroyed the signs.

"The traditional definition of acting under color of state law requires that the defendant in a § 1983 action have exercised power 'possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.'" *West v. Atkins*, 487 U.S. 42, 49 (1988) (quoting *United States v. Classic*, 313 U.S. 299, 326 (1941)); *see Roe v. Humke*, 128 F.3d 1213, 1215 (8th Cir. 1997). "It is firmly established that a defendant in a § 1983 suit acts under color of state law when he abuses the position given to him by the State. Thus, generally, a public employee acts under color of state law while acting in his official capacity or while exercising his responsibilities pursuant to state law." *West*, 487 U.S. at 49-50 (citation omitted). "[U]nder 'color' of law means under 'pretense' of law. Thus acts of officers in the ambit of their personal pursuits are plainly excluded. Acts of officers who undertake to perform their official duties are included whether they hew to the line of their authority or overstep it." *Screws v. United States*, 325 U.S. 91, 111 (plurality opinion); *see Dossett v. First State Bank*, 399 F.3d 940, 949 (8th Cir. 2005). "Private action is not converted into state action unless the state, by its law, has compelled the act; mere acquiescence is not enough." *Reinhart v. City of Brookings*, 84 F.3d 1071, 1073 (8th Cir. 1996).

In this case, Parr states in her affidavit that she cut down two signs in November 2003, that she thought the signs belonged to Transaction Real Estate or its owner, and that she removed the signs in her capacity as President of the Lake St. Croix Villas Homeowners Association, Inc. Progressive Real Estate and M.A. Fearing Companies respond that Parr acted under color of state law because she received permission from the City before removing the signs. They support their argument with statements Parr allegedly made to a deputy sheriff whose report states:

14

"[Parr] stated that the Association had voted and decided that the signs were to come down. She stated that she contacted the St. Croix Beach City and that the City stated that they didn't care if she took down the signs and go ahead." Parr's removal of the signs with the City's approval or acquiescence does not constitute action under the color of state law. *See Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 52 (1999) ("Action taken by private entities with the mere approval or acquiescence of the State is not state action."); *Reinhart*, 84 F.3d at 1073. The Court therefore grants Parr's and the City's motions as they relate to the claim under section 1983 for the alleged destruction of signs.

**B.     State-law claims**

The sole basis for the Court's jurisdiction over Plaintiffs' state-law claims is 28 U.S.C. § 1367(a) (2000), which permits a district court to exercise supplemental jurisdiction over claims that are part of the same case or controversy as the claims that fall within the district court's original jurisdiction. A district court may, in its discretion, decline to exercise supplemental jurisdiction when "all claims over which it has original jurisdiction" have been dismissed. 28 U.S.C. § 1367(c)(3); *see Franklin v. Zain*, 152 F.3d 783, 786 (8th Cir. 1998) (holding district court did not abuse its discretion in declining to exercise supplemental jurisdiction over state-law claim pursuant to section 1367(c)(3)); *Save Our Health Org. v. Recomp of Minn., Inc.*, 829 F. Supp. 288, 293 (D. Minn. 1993), *aff'd*, 37 F.3d 1334 (8th Cir. 1994). In this case, Defendants are entitled to summary judgment on all claims that fall within the Court's original jurisdiction. The Court declines to exercise supplemental jurisdiction over the state-law claims. The Court therefore dismisses the state-law claims without prejudice. *See Lindsey v. Dillard's, Inc.*, 306 F.3d 596, 599 (8th Cir. 2002).

### III. CONCLUSION

Based on the files, records, and proceedings herein, and for the reasons stated above, IT IS ORDERED THAT:

1. Plaintiffs' motion for partial summary judgment [Docket No. 30] is DENIED.

2. Parr and Swenson's motion for summary judgment [Docket No. 47] is GRANTED IN PART and DENIED IN PART.

3. The City's motion for summary judgment [Docket No. 55] is GRANTED IN PART and DENIED IN PART.

4. The Amended Complaint [Docket No. 29] is DISMISSED WITH PREJUDICE insofar as it asserts claims under 42 U.S.C. § 1983.

5. The Amended Complaint [Docket No. 29] is DISMISSED WITHOUT PREJUDICE insofar as it asserts claims under state law.

LET JUDGMENT BE ENTERED ACCORDINGLY.

Dated: March 17, 2006

        s/ Joan N. Ericksen
        JOAN N. ERICKSEN
        United States District Judge